STATE OF NORTH CAROLINA v. SHAWN LAMONT BORDERS

No. COA03-439

(Filed 4 May 2004)

## 1. Criminal Law— instructions—admissions

There was no error in a robbery prosecution in the trial court's instruction that there was evidence tending to show that defendant had admitted one or more facts relating to the crime charged and that the jurors should consider all of the circumstances under which any admissions were made. Although defendant contended that this was tantamount to telling the jury that he had committed the robbery, the instruction was virtually identical to the Pattern Jury Instruction requested by the State, it was supported by the testimony, and it made no mention of any particular element of the offense or that defendant had admitted the robbery.

## 2. Appeal and Error— nonstatutory aggravating factors—no objection needed

An assignment of error to the finding of nonstatutory aggravating factors was considered even though defendant did not object at trial. The court should know that a defendant does not want the court to find an aggravating factor and an objection is not necessary to preserve the question for review.

## 3. Sentencing— nonstatutory aggravating factors—vulnerable victim—estimation of age and strength by court—findings insufficient

There was insufficient evidence in a sentencing hearing for robbery for the court to find the nonstatutory aggravating factor that the crime was committed against a victim who was smaller, older, and weaker, and that defendant took not only money but the vehicle which provided the victim's income. When estimating a victim's age and the relative size and

STATE v. BORDERS

[164 N.C. App. 120 (2004)]

strength of individuals, the court must make relevant findings unless there is evidence in the record to allow meaningful appellate review. Here there was not.

**4. Sentencing— nonstatutory aggravating factors—course of conduct—other convictions also used for prior record level**

The trial court did not err when sentencing defendant for robbery by finding the nonstatutory aggravating factor that the crime was part of a course of conduct involving violence, including at least two previous robberies. Defendant's previous convictions involved violence by their nature, and there is no authority precluding the use of prior convictions to aggravate the sentence when those convictions were also used to determine defendant's prior record level.

**5. Sentencing— nonstatutory aggravating factors—testimony of another crime—not reasonably related to crime for which sentence imposed**

The nonstatutory aggravating factor that defendant had testified that he had sold counterfeit controlled substances to the victim was not reasonably related to robbery, the crime for which defendant was being sentenced.

Judge LEVINSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 25 September 2002 by Judge Forrest Donald Bridges in Cleveland County Superior Court. Heard in the Court of Appeals 28 January 2004.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Charles J. Murray, for the State.*

*The Teeter Law Firm, by Kelly Scott Lee, for defendant-appellant.*

HUNTER, Judge.

Shawn Lamont Borders ("defendant") appeals a judgment sentencing him in the aggravated range to 146 to 185 months imprisonment for robbery with a dangerous weapon. Specifically, defendant takes issue with (I) a jury instruction, and (II) the trial court's finding of three non-statutory aggravating factors. For the reasons stated herein, we conclude there was no error as to the jury instruction, but that defendant's case must be remanded for a new sentenc-

STATE v. BORDERS

[164 N.C. App. 120 (2004)]

ing hearing due to the trial court committing error by finding certain aggravating factors.

On 16 July 2001, defendant was indicted for committing a robbery with a dangerous weapon. Defendant's trial began on 23 September 2002, during which the following evidence was offered.

The State's evidence tended to show that defendant called for a taxicab at approximately 1:30 a.m. on the morning of 21 June 2001. When the taxicab arrived, defendant got in the back seat of the vehicle and subsequently held a knife with a five-inch blade to the neck of the driver, Gerald Wyatt ("Wyatt"). Defendant then proceeded to threaten and physically assault Wyatt, before taking approximately seventy-six dollars in cash from under the driver's seat, pushing Wyatt out of the taxicab, and driving off. Wyatt immediately located a police officer and told the officer that he was robbed by defendant, a man he recognized as someone he had given several taxicab rides to over the last year. Wyatt's taxicab was found approximately two days later.

Defendant was arrested on 30 June 2001. Detective Tracy Curry ("Detective Curry") testified that, following defendant's arrest, defendant stated he had actually

asked [Wyatt] for the forty dollars that he owed him. [Wyatt] told him that [he] did not have the money, but [defendant] had seen [Wyatt] try to hide money under the seat.

And that he got out of the cab, took the money from under the seat, told [Wyatt] that he should not lie to him again and left the area.

Defendant's evidence tended to show that Wyatt paged defendant on the morning in question, indicating to defendant that Wyatt wanted to arrange a drug deal. Wyatt subsequently picked defendant up in his taxicab and requested two rocks of crack cocaine for forty dollars, which defendant provided. As Wyatt smoked the crack cocaine, he realized that it was counterfeit and demanded his money back. Defendant refused and exited the taxicab. In order to seek "revenge" on defendant, Wyatt later told the police that defendant had robbed him. Defendant's earlier cross-examination of Wyatt had revealed that Wyatt did have a number of prior drug arrests, but no drug convictions. Additional facts relevant to this appeal will be provided as necessary in analyzing defendant's assigned errors.

**STATE v. BORDERS**

[164 N.C. App. 120 (2004)]

I.

[1] By his first assignment of error, defendant argues the trial court erred by giving a jury instruction that implied he had committed the crime for which he was accused. Specifically, at the charge conference, the State proposed that Jury Instruction Number 104.60 be submitted to the jury, to which defendant objected on the grounds that he had not admitted to one or more of the elements of the crime charged. The trial court noted defendant's objection and gave the charge to the jury as follows:

> There is evidence in this case that tends to show that the Defendant has at one time or another admitted one or more facts relating to the crime charged in this case. Now if you find, that the Defendant has made any such a[n] admission, then you should consider all the circumstances under which it was made in determining whether it was a truthful admission and the weight which you will give to it.

Defendant contends that by giving the instruction, the trial court basically told the jury that he had committed robbery with a dangerous weapon. We disagree.

"A trial court is not required to give a requested instruction in the exact language of the request, but where the request is correct in law and supported by the evidence in the case, the court must give the instruction in substance." *State v. Summey*, 109 N.C. App. 518, 526, 428 S.E.2d 245, 249 (1993). Here, the instruction given to the jury was "virtually identical" to Jury Instruction Number 104.60. *Id.* (citing *State v. Green*, 305 N.C. 463, 290 S.E.2d 625 (1982)). *See also* 1 N.C.P.I.—Crim. 104.60 (1970). The instruction made no specific mention of any particular element of the offense charged or that defendant had admitted robbing Wyatt with a dangerous weapon— only that the evidence tended to show an admission by defendant of *"one or more facts relating to the crime charged*[.]" Specifically, those "facts" included (1) testimony from Detective Curry that defendant told him that although Wyatt had tried to hide money from defendant, defendant "took the money from under the seat, . . . and left the area[,]" and (2) testimony from defendant that he had "snatched" money away from Wyatt, then "got out of the cab and left." Their testimony provided the evidence needed to support some of the elements of robbery with a dangerous weapon, i.e., an unlawful taking of another's personal property. *See* N.C. Gen. Stat. § 14-87(a) (2003). Thus, the requested instruction was correctly

stated in substance and supported by the evidence, resulting in no error by the trial court.

## II.

**[2]** Defendant also assigns error to the trial court's finding that there was evidence to support three non-statutory aggravating factors, which were used to sentence defendant in the aggravated range. Initially, we note that the State argues defendant did not object to the non-statutory aggravating factors at trial and therefore, should be denied the opportunity to assign error to them on appeal. However, our Supreme Court has held that preserving this question for appellate review by objecting is unnecessary because it is clear that a defendant does "not want the court to find [an] aggravating factor and the court kn[ows] or should . . . know[] it." *See State v. Canady,* 330 N.C. 398, 402, 410 S.E.2d 875, 878 (1991). We therefore address defendant's assigned error.

"The State has the burden of proving the existence of a nonstatutory aggravating factor by a preponderance of the evidence. The State must also show that it is reasonably related to the purposes of sentencing." *State v. Hargrove,* 104 N.C. App. 194, 200, 408 S.E.2d 757, 761 (1991). The decision to depart from the presumptive range and sentence a defendant in the aggravated range is in the discretion of the court. N.C. Gen. Stat. § 15A-1340.16(a) (2003). In the instant case, defendant takes issue with the following three non-statutory aggravating factors found by the trial court.

## A.

**[3]** Defendant contends there was no evidence offered to support, as a factor in aggravation, that the "crime was committed against a victim who was smaller, older and weaker, taking not only money but also a vehicle that provided the victim's means of income." In *State v. Ackerman,* 144 N.C. App. 452, 461-62, 551 S.E.2d 139, 145 (2001), this Court held that the trier of fact can estimate a defendant's age when necessary for establishing an element of the offense charged after having ample opportunity to view that defendant *and* when presented with the benefit of other circumstantial or direct evidence. We conclude such a determination may be made by a trial court as well. However, when estimating the respective ages of individuals, and by analogy the comparative strengths and sizes of individuals, the trial court must make relevant findings of fact, unless there is direct or circumstantial evidence in the record that allows for a meaningful view to be conducted by an appellate court.

**STATE v. BORDERS**

[164 N.C. App. 120 (2004)]

Here, the transcript provides no findings of fact that allow this Court to review how the trial court found this non-statutory aggravating factor. Further, there was no direct or circumstantial evidence offered at trial comparing the physical characteristics of defendant and Wyatt. The only evidence that remotely inferred the respective strengths of the two men came from the following testimony of Wyatt: (1) defendant "got out of the car . . . , got me by the pants in the front, pulled me from the car and shook me down[;]" and (2) defendant "took his hands and he pushed me in the chest and I fell in the street." However, Wyatt's testimony alone is insufficient to allow this Court to definitively conclude the trial court acted properly by finding this non-statutory aggravating factor.

B.

[4] Next, defendant contends there was no evidence offered that the "crime was part of a course of conduct by the defendant involving violence against other persons, including at least 2 previous robberies." Our Supreme Court has previously held that evidence establishing a pattern or course of violent conduct by a defendant is an acceptable non-statutory aggravating factor. *See State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985). Here, defendant was convicted of robbery with a dangerous weapon based on evidence that tended to show he physically assaulted and took money from Wyatt. The trial court was aware that defendant had previously been convicted of numerous offenses, which included assaulting a government employee, resisting public officers, and twice committing common law robbery. By the very nature of those convictions, violence was either threatened or occurred. Thus, while defendant's course of violent conduct could have been shown through other acts that did not result in convictions, *see Avery*, the convictions themselves merely evidenced they were predicated on violence.

As an aside, Our Legislature has clearly provided that convictions used to support an habitual felon indictment cannot be used to determine a defendant's prior record level. *See* N.C. Gen. Stat. § 14-7.6 (2003); *State v. Lee*, 150 N.C. App. 701, 564 S.E.2d 597, *disc. review denied*, 356 N.C. 171, 568 S.E.2d 856 (2002). However, we have found no statutory authority or case law precluding prior convictions (punishable by more than 60 days' confinement, *see State v. Harper*, 96 N.C. App. 36, 43, 384 S.E.2d 297, 301 (1989)) used to determine a defendant's prior record level from also being used to aggravate that defendant's sentence. While we note this distinction in the instant case because defendant's two prior robbery convictions mentioned in

this non-statutory aggravating factor were also used to determine his prior record level, we further note that if the Legislature intended to prohibit this occurrence it could have done so by enacting legislation similar to that regarding habitual felon indictments.

## C.

**[5]** Defendant finally contends that the trial court erred in finding as a non-statutory aggravating factor that, "[d]efendant testified that, on the alleged date, he sold counterfeit controlled substances to the victim. By necessity, either this testimony is false or defendant has committed another felony with which he has not been charged." We fail to see how this aggravating factor was reasonably related to the purposes of sentencing.

N.C. Gen. Stat. § 15A-1340.12 (2003) provides:

> The primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

Our case law clearly suggests that in order for an aggravating factor to be reasonably related to the purposes of sentencing it must be reasonably related to the crime for which defendant was convicted. *See State v. Ledford*, 315 N.C. 599, 625, 340 S.E.2d 309, 325 (1986) (holding that "the trial judge . . . erred by finding two aggravating circumstances—that the victim was very old and that the offense was especially heinous, atrocious, and cruel—which [we]re, under the facts of th[at] case, totally unrelated to the crime of felonious larceny"); *State v. Skinner*, 162 N.C. App. 434, 438-39, 590 S.E.2d 876, 881 (2004) (holding that there was insufficient evidence to support that the victim's age was a factor in aggravation because it had no bearing on her vulnerability to larceny). Here, whether defendant committed another felony or perjury, neither of those crimes were reasonably related to his conviction for robbery with a dangerous weapon.

Accordingly, non-statutory aggravating factors "A" and "C" found by the trial court were not supported by a preponderance of the evidence. Therefore, we must vacate defendant's aggravated sentence of robbery with a dangerous weapon and remand for a new sentencing hearing.

Remand for resentencing.

Judge McCULLOUGH concurs.

Judge LEVINSON concurs in part and dissents in part in a separate opinion.

LEVINSON, Judge concurring in part and dissenting in part.

I concur in the majority opinion, except with regard to its holding that it was not error for the trial court to find the nonstatutory aggravating factor that this offense was part of a course of conduct involving violence against other persons. I therefore respectfully dissent on this issue.

"The State has the burden of proving the existence of a nonstatutory aggravating factor by a preponderance of the evidence." *State v. Hargrove*, 104 N.C. App. 194, 200, 408 S.E.2d 757, 761 (1991). In the instant case, defendant's sentence was based in part upon the nonstatutory aggravating factor that defendant's commission of robbery with a dangerous weapon "was part of a course of conduct by the defendant involving violence against other persons, including at least 2 previous robberies." The court based this finding on the defendant's criminal record, which included prior convictions for, *e.g.*, common law robbery and assault. However, no evidence was adduced at trial or during sentencing concerning the facts or circumstances of these prior convictions. Thus, the trial court found the existence of this aggravating factor based solely on the bare fact of defendant's prior record. I believe this was error for several reasons.

First, the legislature has already established a mechanism for consideration of a criminal defendant's prior record in determining the appropriate sentence. Chapter 14 of the North Carolina General Statute assigns criminal offenses to a specific "class" corresponding to the seriousness of the offense. Under N.C.G.S. § 15A-1340.14 (2003), a trial judge sentencing a defendant for a felony offense must first determine the defendant's "level" by assigning a certain number of "points" for each prior conviction, depending on the class of the prior offense. Thus, the presumptive sentence for a criminal defendant is a function of both his current offense and his prior record. I would conclude that, in the absence of factual information about the defendant's prior convictions, consideration of his criminal history is generally accomplished by means of this statutory sentencing grid. In

the instant case, the trial court's finding is tantamount to a nonstatutory aggravating factor that "defendant has a prior criminal history."[1]

Secondly, the State failed to present any evidence to support this aggravating factor. In this regard, it is useful to consider a **statutory** aggravating factor that may be considered by the jury in the sentencing phase of a capital case:

> (11) The murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons.

N.C.G.S. § 15A-2000(e)(11) (2003). Because the language of this aggravating factor essentially parallels that found by the trial court, cases interpreting G.S. § 15A-2000(e)(11) are instructive. In *State v. Cummings*, 346 N.C. 291, 328-29, 488 S.E.2d 550, 572 (1997) the North Carolina Supreme Court held:

> Submission of course of conduct requires that "there is evidence that the victim's murder and the other violent crimes were part of a pattern of intentional acts establishing that in defendant's mind, there existed a plan, scheme or design involving the murder of the victim and the other crimes of violence." . . . In determining whether the evidence tends to show that another crime and the crime for which defendant is being sentenced were part of a course of conduct, the trial court must consider a number of factors, including the temporal proximity of the events to one another, a recurrent *modus operandi*, and motivation by the same reasons.

(quoting *State v. Walls*, 342 N.C. 1, 69, 463 S.E.2d 738, 775 (1995)) (further citations omitted). Thus, the Court required a factual connection among the crimes alleged to constitute a "course of conduct." The North Carolina Supreme Court has consistently adhered to the requirements articulated in *Cummings*. For example, in *State v. Hoffman*, 349 N.C. 167, 188, 505 S.E.2d 80, 93 (1998), the Court approved submission of the aggravating factor, noting that:

---

1. Another common scenario could be implicated by the majority's opinion insofar as it affirms the trial court's judgment concerning the "course of conduct" factor. Individuals being sentenced for the sale and delivery of cocaine whose prior records reveal convictions for similar offenses could be subject to a finding that "defendant has engaged in a course of conduct involving the violation of controlled substances statutes" based merely on a review of their prior criminal histories. This, in my view, would be erroneous.

**STATE v. BORDERS**

[164 N.C. App. 120 (2004)]

> The robbery and murder in this case occurred [in] November 1995. The two bank robberies . . . occurred [in September and October 1995]. This span of time was not so great as to prevent the crimes from being considered part of the same course of conduct. There was also a similar *modus operandi* employed in the crimes. All occurred in small towns around Charlotte, North Carolina. All occurred in daylight hours while the businesses were open. The same sawed-off shotgun, green bag, ski mask, and white Nissan were used in all the crimes. Finally, all the crimes shared the same motive, pecuniary gain.

(citing *Cummings*, 346 N.C. at 328-29, 488 S.E.2d at 572). However, in *State v. Berry*, 356 N.C. 490, 573 S.E.2d 132 (2002), the Court found plain error where the trial court gave an instruction that "allowed the jury to find the aggravating circumstance without also finding that the murder of Fetter was part of a course of conduct that included the earlier murder of Maves. The mere fact that one murder followed the other does not establish a course of conduct." *Id.* at 523, 573 S.E.2d at 153.[2]

*State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985), relied upon by the majority opinion, neither contradicts these holdings nor supports the proposition that the present defendant's bare criminal record can support the trial court's finding that the subject offense "was part of a course of conduct by the defendant involving violence against other persons, including at least 2 previous robberies." First, in *Avery*, 315 N.C. at 35, 337 S.E.2d at 805, the trial court based its finding that the defendant had "engaged in a pattern or course of violent conduct" on "evidence that prior to [the] date [of the subject offenses] defendant had hit several members of his family during attacks of rage, shot a gun while angry at one of his neighbors, hit his boss at another company where he once worked, and was involved in two fist fights." *Id.* at 35, 337 S.E.2d at 806. Thus, the trial court based its finding on this **factual information** about the defendant's actions, and not upon his criminal record. Indeed, the opinion does not even state whether these actions were the subject of criminal prosecution. Secondly, the issue before the Court was whether two aggravators were duplicative of each other. The Court in *Avery* did not address the issue of what

2. An individual may commit the offense of resisting a law enforcement officer without the use of physical violence. *State v. Hardy*, 298 N.C. 191, 196, 257 S.E.2d 426, 430 (1979). That the majority opinion rests its reasoning, in part, upon defendant's conviction of this offense demonstrates the danger in permitting our trial courts to find a course of conduct by merely examining criminal histories without evidence of a factual relationship among the relevant offenses.

evidence is required in order for a series of actions to constitute a "course of conduct." In sum, *Avery*, decided in 1985 under the repealed Fair Sentencing Act, neither contradicts current Supreme Court jurisprudence nor supports the trial court's finding of this aggravator in the instant case.

In the present case no evidence was presented regarding the factors cited in *Cummings* or any other factual connection between the subject offense and defendant's prior criminal behavior. This was error and, accordingly, I dissent from this part of the majority opinion.